## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LAURIE MALONE** | : | |
| | : | |
| | : | **CIVIL ACTION NO. 17-5372** |
| **Plaintiff,** | : | |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA** | : | |
| **Defendant.** | : | |

_____

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b)**

**CONSOLE MATTIACCI LAW, LLC**

Dated: March 16, 2018          By:     /s/ Caren N. Gurmankin_____
                                       Caren N. Gurmankin, Esquire
                                       1525 Locust Street, 9th Floor
                                       Philadelphia, PA 19102
                                       (215) 545-7676
                                       Attorney for Plaintiff,
                                       Laurie Malone

**TABLE OF CONTENTS**

I.      INTRODUCTION…………………………………………………………...…….................1

II.    RELEVANT FACTUAL BACKGROUND/PROCEDURAL HISTORY…………….............2

III.   ARGUMENT…………………………………………………………………….........6

      A.  Legal Standard for Motion to Dismiss…………………………………………………6

      B.  This Court Should Deny Defendant's Attempt to Eliminate Plaintiff's Failure to
Promote Claims As There Is No Legitimate Or Rational Basis For Its Argument…………8

      C.  Defendant's Motion to Dismiss Plaintiff's Retaliation Claims Should Be Denied
As Their Arguments Are Based On Mischaracterizations Of The Facts And The Law……10

           1.  Plaintiff has sufficiently pled that she engaged in protected activity regarding sex
and race discriminatory conduct……………………………………………………..10

           2.  Plaintiff has set forth sufficient evidence at this stage to establish a casual connection
because her protected activity and Defendant's retaliatory conduct…………………13

      D.  Plaintiff Exhausted Her Administration Remedies Regarding Defendant's Failure to
Promote Her Into The First Assistant Position……………………………………………17

      E.  Plaintiff Has Sufficiently Pled Her Claims of Discrimination………………………18

      F.  The Issues About Which Plaintiff Was Complaining Are A Matter of Public Concern; As
Such, Defendant's Motion to Dismiss Her Section 1983 Claims Should Be Denied……...19

IV.   CONCLUSION……………………………………………………………………..21

## <u>TABLE OF AUTHORITIES</u>

Page(s)

*Abramson v. William Paterson College of New Jersey*,
  260 F.3d 265 (3d Cir. 2001) .................................................................................... 14

*Aman v. Cort Furniture Rental Corp.*,
  85 F.3d 1074 (3d Cir. 1996) .................................................................................... 12

*Azarro v. City of Allegheny*,
  110 F.3d 968 (3d Cir. 1997) .................................................................................... 19

*Barber v. CSX Distribution Services*,
  68 F.3d 694 (3d Cir. 1995) ................................................................................ 11, 12

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................ 7, 8

*Bryant v. Wilkes-Barre Hosp., Co., LLC*,
  2015 U.S. Dist. LEXIS 15540 (M.D.Pa. Feb. 10, 2015) ......................................... 11

*Conley v. Gibson*,
  355 U.S. 41, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957) ..................................................... 8

*Connelly v. Lane Constr. Corp.*,
  809 F.3d 780 (3d Cir. 2016) ................................................................................ 18, 19

*Doe v. Kohn Nast & Graf, P.C.*,
  866 F. Supp. 190 (E.D. Pa. 1994) ........................................................................... 17

*Farrell v. Planters Lifesavers Company*,
  206 F.3d 271 (3d Cir. 2000) .................................................................................... 14

*Faust v. Northfield Board of Education*,
  2012 U.S. Dist. LEXIS 125195, (D.N.J. 2012) ...................................................... 7, 8

*Hishon v. King & Spalding*,
  467 U.S. 69 (1984)..................................................................................................... 8

*Indeed, in Wils v. Phillips*,
  1999 U.S. Dist. LEXIS 4625 (Apr. 9, 1999) ........................................................... 15

*Isler v. Keystone Sch. Dist.*,
  2008 U.S. Dist. LEXIS 65902 (W.D.Pa. Aug. 12, 2008) ......................................... 19

*Kachmar v. Sungard Data Systems, Inc.*,
  109 F.3d 173 (3d Cir. 1997) ................................................................................ 13, 14

*Kokinchak v. Postmaster Gen. of the United States*,
  677 Fed.Appx. 764 (3d Cir. 2017) ........................................................................... 13

*McAssey v. Discovery Mach., Inc.*,
  2018 U.S. Dist. LEXIS 6728 (M.D.Pa. Jan. 12, 2018) ............................................. 13

*McDonnell Douglas Corp. v. Green,*
   411 U.S. 792 (1973) ............................................................................................... 19

*Murray v. Beverage Distribution Center,*
   522 Fed.Appx. 90 (3d Cir. 2013) ............................................................................ 9

*Ostapowicz v. Johnson Bronze Co.,*
   541 F.2d 394 (3d Cir. 1976) ................................................................................... 17

*Phillips v. County of Allegheny,*
   515 F.3d 224 (3d Cir. 2008) ..................................................................................... 8

*Stanton v. City of Philadelphia,*
   2011 U.S. Dist. LEXIS 19916, (E.D. Pa. 2011) .................................................... 7

*Watkins v. Pa. Bd. of Prob. & Parole,*
   2002 U.S. Dist. LEXIS 23504 (E.D.Pa. Nov. 25, 2002) .................................... 12

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

———————————————————— :
                                          :
**LAURIE MALONE**                         :
                                          :       **CIVIL ACTION NO. 17-5372**
                    **Plaintiff,**        :
                                          :
          **v.**                          :
                                          :
**CITY OF PHILADELPHIA**                  :
                    **Defendant.**        :
———————————————————— :

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b)

## I.    INTRODUCTION

Plaintiff, Laurie Malone, through her undersigned counsel, submits this Memorandum in Opposition to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint.

Plaintiff was a twenty (20) year, highly regarded prosecutor in Defendant's District Attorney's office when she made complaints regarding sex and race-based discriminatory conduct by high-ranking, white, male employees of Defendant, and Defendant's failure to take appropriate remedial and/or corrective action regarding the same.  Defendant then retaliated against her, including demoting her; failing to promote her; treating her in a hostile manner; undermining her authority; and, finally, constructively discharging her.

Defendant's discriminatory and retaliatory conduct against Plaintiff violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"), 42 U.S.C. §1981 ("Section 1981"), the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et*

*seq.* ("PHRA"); and the Philadelphia Fair Practices Ordinance, as amended, Phila. Code §9-1101, *et seq.* ("PFPO"). Defendant's conduct also deprived Plaintiff of her constitutional rights in violation of 42 U.S.C. §1983 ("Section 1983").

Plaintiff has filed a First Amended Complaint which sets forth in detail her claims that Defendant discriminated against her, and then retaliated against her when she engaged in protected activity by complaining about race and sex discriminatory conduct. Despite the same, Defendants have filed a Motion to Dismiss, incorrectly asserting that Plaintiff has not sufficiently pled her claims. As set forth in detail below, Defendant has failed to meet its burden to demonstrate, as it must, that Plaintiff's claims should be dismissed. As such, its present Motion should be denied.

## II.  RELEVANT FACTUAL BACKGROUND/PROCEDURAL HISTORY

Plaintiff was hired by Defendant in around 1995 as an Assistant District Attorney. (Plaintiff's First Amended Complaint ¶21, hereinafter referred to as Pl. Am. Compl. at ¶___)   In around 2011, she was promoted into the position of Deputy, Pre-Trial Division. (*Id*.)  In her Deputy role, Plaintiff's responsibilities included supervising Defendant's Charging Unit; Diversion Courts Unit; Pre-Trial Motions Unit; and, Traffic Court Unit. (*Id*.)  Plaintiff consistently demonstrated excellent performance throughout her employment with Defendant. (Pl. Am. Compl. at ¶22)

In around August 2015, Plaintiff, along with other employees at Defendant, became aware that certain of Defendant's high-level employees, all of whom were male and all of whom were Caucasian, had sent and received from work e-mail addresses racist, sexist, and sexually inappropriate communications. (Pl. Am. Compl. at ¶23)  The emails that the high-level

2

employees sent included extremely graphic, offensive, and inappropriate sexual and racist content; examples of the same included:

   (a) A picture of a woman's exposed breasts captioned, "BOOBS What more motivation do you need?";

   (b) A picture of a young boy holding a pair of scissors and a sign reading, "Full Brazilian 5 cents" and captioned, "ENTREPRENUER You need to start young";

   (c) A picture of a topless woman posing in a provocative position in thong underwear and captioned, "A GREAT BUTT God's way of apologizing for a lack of a rack";

   (d) A picture of a woman staring at another woman's chest and captioned, "EPIC BOOBS Can turn heterosexual females into lesbians in 0.39 seconds";

   (e) A picture of a black man tossing a Kentucky Fried Chicken bucket into the air and captioned, "GENERALIZATIONS Just because they're so damn funny when you see them";

   (f) A picture of a woman wearing a t-shirt reading "W.I.F.E. Washing Ironing Fucking Etc." and then captioned, "PLACE Know it!"; and,

   (g) A picture of a woman wearing a wedding dress and captioned, "WHITE Because you want the dishwasher to match the rest of the appliances."

(Pl. Am. Compl. at ¶35)

   The emails generated significant publicity in the local and national press. (Pl. Am. Compl. at ¶25)

   Within a few days of Plaintiff learning of the racist and sexist conduct of certain of Defendant's employees, she complained to District Attorney, and her direct supervisor, Seth Williams (male), regarding the same.  Plaintiff specifically told Williams that the fact that Defendants' employees had sent such emails created a hostile work environment based on sex and race, and that Defendant's failure to take action against the employees who had sent the racist and sexist emails would negatively impact the morale of Defendant's female employees. Williams was dismissive of Plaintiff's complaint. (Pl. Am. Compl. at ¶26)

Shortly thereafter, Williams held a meeting of the District Attorney's senior leadership, including Plaintiff, to vote on how the situation should be resolved regarding the (male, white) high-level members of the staff sending racist and sexist emails. (Pl. Am. Compl. at ¶27) Plaintiff was one of only two employees and the only female and racial minority employee to vote in favor of terminating one of the employees, and the only employee to vote in favor of terminating another employee involved in the emails. (Pl. Am. Compl. at ¶28) Plaintiff expressed that she was voting in favor of terminating the involved employees because she believed that the conduct of these employees, i.e., engaging in racist and sexist conduct, created a hostile work environment at Defendant's District Attorney's office based on sex and race. (Pl. Am. Compl. at ¶29) Williams advised that he was not going to fire, or even demote, any of the male, white employees who sent the racist and sexist emails. (Pl. Am. Compl. at ¶30) Williams also said that he was a "recovering sexist," that he was "evolving," and that the employees who sent the emails could be "rehabilitated." (Pl. Am. Compl. at ¶31) Defendant's only action upon learning that certain of its (white, male) high-level employees were involved in sending racist and sexist emails was to provide sensitivity training to its employees. (Pl. Am. Compl. at ¶32)

After Plaintiff engaged in protected activity regarding sex and race discrimination, Defendant retaliated against her. (Pl. Am. Compl. at ¶33)   In or about November 2015, Defendant announced that it hired an individual, who is Caucasian, from outside Defendant, to fill the newly created position of Chief of Staff/Chief Integrity Officer/Chief Counsel ("COS"). (Pl. Am. Compl. at ¶34) Defendant did not post the open position, no one at Defendant spoke with Plaintiff about considering her for such a position, and no one at Defendant indicated that it was creating such a position. (*Id.*) Upon Plaintiff's information and belief, she was more qualified than the individual who was hired into the COS position. (Pl. Am. Compl. at ¶35)

4

Also in or about November 2015, Defendant announced that it was promoting a male Deputy District Attorney into the position of First Assistant District Attorney ("First Assistant"). (Pl. Am. Compl. at ¶36)  Upon Plaintiff's information and belief, she was more qualified than the individual who was promoted into the position of First Assistant. (Pl. Am. Compl. at ¶37)

After Plaintiff engaged in protected activity, Defendant retaliated against her by questioning her direct reports regarding her conduct at meetings and her communications with her staff; accusing her, falsely, of inappropriately communicating information to her staff prior to Defendant officially announcing the same; questioning Plaintiff's decisions regarding investigations and charging recommendations, which were under her area of responsibility, and which had not been challenged prior to her expressed opposition to Defendant's tolerance of its employees' sexist and racist conduct; and, ignoring rejecting her request for a meeting with Defendant's First Assistant District Attorney, and Williams' second-in-command, regarding Defendant's discriminatory and retaliatory conduct. (Pl. Am. Compl. at ¶¶38-41)

On or about February 25, 2016, Defendant demoted Plaintiff into the position of Chief of Private Criminal Complaints, effective immediately. (Pl. Am. Compl. at ¶42)   The demotion resulted in a salary reduction as well as lesser responsibilities.  Williams told Plaintiff that the reason for the same was her "lack of loyalty" to him. (*Id*.)  Defendant failed to provide Plaintiff with a legitimate, non-discriminatory reason for demoting her. (Pl. Am. Compl. at ¶43)

On March 23, 2016, Plaintiff filed her (first) Charge of Discrimination with the EEOC. She sent the same to Defendant on that same day. (Pl. Am. Compl. at ¶44)

Plaintiff was then made aware that employees of Defendant who reported directly to Williams, including one of the high-level (male, white) employees who sent the sexist and racist emails, were interrogating her colleagues about her in a ways that suggested that Plaintiff

engaged in wrongful conduct, including asking whether they had ever seen Plaintiff drunk; and, questioning her work ethic and her work practices. (Pl. Am. Compl. at ¶45)

In or about July 2016, Plaintiff's doctor diagnosed her with anxiety resulting from Defendant's continued discriminatory and retaliatory treatment.  Plaintiff went on approved leave pursuant to the Family Medical Leave Act regarding the same. (Pl. Am. Compl. at ¶46)  As a result of Defendant's continued discriminatory and retaliatory conduct, Plaintiff was constructively discharged from Defendant's employment. (Pl. Am. Compl. at ¶47)  Prior to Plaintiff's constructive discharge, no one at Defendant ever told her that it was investigating her complaints, including her two (2) Charges of Discrimination that she filed with the EEOC, copies of which she sent to Defendant on the dates that she filed them.  No one at Defendant ever told Plaintiff that it was taking any action to correct or remedy the discriminatory and retaliatory conduct to which she was subjected. (Pl. Am. Compl. at ¶48)

Plaintiff filed her First Amended Complaint in this Court on February 16, 2018, after which Defendant filed its present Motion to Dismiss.

## III.   ARGUMENT[1]

### A.   Legal Standard for Motion to Dismiss

In considering a motion to dismiss, a district court "asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'"

---

[1] In Defendant's Motion, it confirmed that it is not moving to dismiss Plaintiff's hostile work environment claim. Def.'s Mot. p. 5, FN 4.  Defendant stated, inaccurately, that Plaintiff did not plead that she was subjected to a hostile work environment. *See* Pl. Am. Compl. ¶52 (Plaintiff's complaints about, and expressed opposition to Defendant's sex discriminatory and race discriminatory conduct was a motivating and/or determinative factor in Defendants' retaliatory treatment of Plaintiff, including subjecting her to a hostile work environment and demoting her.") Plaintiff set forth the retaliatory hostile work environment to which she was subjected in detail in her First Amended Complaint, including in ¶¶38-40, 45.

*Faust v. Northfield Board of Education*, 2012 U.S. Dist. LEXIS 125195, **3-4 (D.N.J. 2012) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544)).

The Federal Rules of Civil Procedure require only "a short and plain statement of the claim that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). In the Third Circuit, the analysis that district courts must undertake when considering a Fed.R.Civ.P. 12(b)(6) motion includes first accepting all of the complaint's well-pleaded facts as true, but disregarding any legal conclusions. *Faust*, 2012 U.S. Dist. LEXIS 125195. Then, the court must "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* Plaintiff need only plead "a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the…claim is and the grounds on which it rests.'" Fed.R.Civ.P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The Court is required to accept as true the facts and allegations contained in the complaint and all reasonable inferences drawn therefrom, and to view the facts in the light most favorable to the non-moving party. *Sadruddin v. City of Newark*, 34 F. Supp. 2d 923, 925 (D.N.J. 1999)(emphasis added); *see also Gen. Motors Corp. v. New A Chevrolet, Inc.*, 263 F.3d 296, 325 (3d Cir. 2001). The moving party has "the burden of showing that there is no cognizable claim for relief" set forth in the complaint. *Stanton v. City of Philadelphia*, 2011 U.S. Dist. LEXIS 19916, **5-6 (E.D. Pa. 2011).

"The court may dismiss the complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984). Moreover, "[t]he Court may

not discuss a complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. Indeed, the question before the Court is not whether plaintiff will ultimately prevail, but whether she can support her claim by proving any set of facts that would entitle her to relief. *See Hishon*, 467 U.S. at 73; *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). All the plaintiff is required to do at this stage is set forth "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)(*quoting Twombly*, 500 U.S. at 556 n.3).

This Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Twombly*, 550 U.S. at 563 n.8. In other words, "[a] well-pleaded complaint may not be dismissed simply because 'it strikes a savvy judge that actual proof of these facts is improbable, and that a recovery is very remote and unlikely.'" *Chan v. County of Lancaster et al.*, 2012 U.S. Dist. LEXIS 141861 (E.D.Pa. 2012) (*citing Twombly*, 550 U.S. at 556)).

As set forth in detail below, Defendant has failed to meet its burden and, as such, their present Motion should be denied.

**B.**     **This Court Should Deny Defendant's Attempt to Eliminate Plaintiff's Failure to Promote Claims As There Is No Legitimate Or Rational Basis For Its Argument**

Defendant's position regarding Plaintiff's failure to promote claims is utterly nonsensical. According to Defendant, Plaintiff's claims that she was not placed into two (2), higher-level positions, the COS position and the First Assistant position, should be dismissed because she did not apply and because she did not plead "that she made every reasonable effort to convey her interest in those positions" to Defendant. Defendant makes this argument, incredibly, despite its

8

admission that it is *undisputed that Plaintiff could not have applied for the newly created COS position because it was never posted; moreover, as Plaintiff asserted in her First Amended Complaint, no one at Defendant spoke with Plaintiff about considering her for such a position and no one at Defendant even indicated that it was creating such a position.* Defendant makes the same argument regarding the First Assistant position, despite the fact that, again, according to Plaintiff's First Amended Complaint, it was *never posted*.

If Defendant's position regarding this issue, for which it has failed to set forth *any* legal basis whatsoever[2], is accepted, then no plaintiff in an employment discrimination case would ever succeed on a failure to promote claim or a failure to hire claim. The employer could defend against such a claim simply by asserting that the plaintiff never expressed interest in the position, despite the fact that the position was never posted, no one at the employer ever told the plaintiff that such a position existed or was being created, and which the employee never knew existed until an announcement was made that someone else was selected for the job. In other words, according to Defendant's position, an employee should be able to prevail on a failure to promote/failure to hire claim (at the motion to dismiss stage) *only* if she was able to foresee that, at some point in the future, her employer will create a particular position, and if she then expressed to her employer that when, at some point in the future they created that particular position (which did not exist at the time of this discussion that she is having and in the event that

---

[2] Defendant has failed to set forth any cases in which the Court has granted a Motion to Dismiss on a failure to promote claim where the plaintiff failed to express interest in a position which the employer never posted, never stated was being created, never discussed with the plaintiff, and did not disclose the existence of the position at issue until announcing that another individual was being placed into the position. The only case to which Defendant cited in apparent support of its argument (which was not on a motion to dismiss), *Murray v. Beverage Distribution Center*, 522 Fed.Appx. 90 (3d Cir. 2013), is distinguishable from the present matter. In *Murray*, and unlike in the present matter, the position at issue *was* posted. The court affirmed the District Court's grant of summary judgment on a failure to hire claim where the plaintiff in that case failed to meet the application requirements for the job; and, utterly refused to participate in the application that was set forth to him, repeatedly.

the employer fails to post that as yet unknown position), she would be interested in the same.
Not only is Defendant's position absurd, but it is not the law, as evidenced by Defendant's
failure to cite to a single case in support of the same.

**C.** **Defendant's Motion to Dismiss Plaintiff's Retaliation Claims Should Be Denied As Their Arguments Are Based On Mischaracterizations Of the Facts And The Law**

**1.** **Plaintiff has sufficiently pled that she engaged in protected activity regarding sex and race discriminatory conduct**

Defendant argues that Plaintiff has failed to demonstrate that she engaged in protected
activity.  Below are Plaintiff's allegations (which Defendant deems to be insufficient)
demonstrating her complaints about the sexist and racist conduct which Defendant's high-level
employees engaged, and her opposition to the same, and to Defendant's failure to take action
regarding the discriminatory conduct:

- Within a few days of Plaintiff learning of the racist and sexist conduct of certain of Defendant's employees, she complained to District Attorney, and her direct supervisor, Seth Williams (male), regarding the same;

- Plaintiff specifically told Williams that the fact that Defendant's employees had sent such emails created a ***hostile work environment based on sex and race***, and that ***Defendant's failure to take action against the employees who had sent the racist and sexist emails would negatively impact the morale of Defendant's female employees***.  Williams was dismissive of Plaintiff's complaint.

- Shortly thereafter, Williams held a meeting of the District Attorney's senior leadership, including Plaintiff, to vote on how the situation should be resolved regarding the (male, white) high-level members of the staff sending racist and sexist emails;

- Plaintiff was one of only two employees and the only female and racial minority employee to vote in favor of terminating one of the employees, and the only employee to vote in favor of terminating another employee involved in the emails.

- Plaintiff expressed that she was voting in favor of terminating the involved employees because she believed that the conduct of these employees, i.e.,

10

engaging in racist and sexist conduct, created a hostile work environment at Defendant's District Attorney's office based on sex and race;

- Williams advised that he was not going to fire, or even demote, any of the male, white employees who sent the racist and sexist emails, and that he was a "recovering sexist," that he was "evolving," and that the employees who sent the emails could be "rehabilitated";

- Defendant's only action to learning that certain of its (white, male) high-level employees were involved in sending racist and sexist emails was to provide sensitivity training to its employees.

Plaintiff has not claimed that she was sexually harassed by the high-level male employees who engaged in the discriminatory conduct about which she complained. In Defendant's Motion, it grossly mischaracterized Plaintiff's allegations regarding her protected activity as her "being forced to work in the same building as three men who sent and received inappropriate emails prior to their employment" with Defendant. As set forth above, Plaintiff's complaints included that the fact that employees of Defendant had sent such racist and sexist emails created a hostile work environment based on sex and race. Her complaints also included that Defendant's failure to take action against the employees who had engaged in such discriminatory conduct would negatively impact Defendant's female employees. Her complaints further included that she voted in favor of terminating the employees who engaged in such discriminatory conduct because she believed that their conduct created a hostile work environment at Defendant based on sex and race.

A plaintiff must engage in protected activity to establish a retaliation claim; the same includes both formal charges of discrimination, as well as "making complaints to management,...protesting against discrimination by industry or society in general." *Barber v. CSX Distribution Services*, 68 F.3d 694 (3d Cir. 1995); *Bryant v. Wilkes-Barre Hosp., Co., LLC*, 2015 U.S. Dist. LEXIS 15540 (M.D.Pa. Feb. 10, 2015). An employee need not prove that the

11

conduct about which she is complaining actually violates the anti-discrimination laws, but just

that she had a good faith, reasonable belief that the conduct about which she is complaining is

unlawful. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996).

As Plaintiff has alleged in detail and as set forth above, she specifically complained about

sexist and racist conduct; she complained about the impact of the discriminatory conduct on

Defendant's female employees; and, she complained about the creation of a hostile work

environment based on sex and race. *See Barber*, 68 F.3d at 700-701. *See also Bryant* (denying

the defendant's motion to dismiss the plaintiff's retaliation claims where the plaintiff had alleged

that she complained about racial discrimination and harassment by defendant's employees);

*Watkins v. Pa. Bd. of Prob. & Parole*, 2002 U.S. Dist. LEXIS 23504 (E.D.Pa. Nov. 25,

2002)(concluding that the plaintiff engaged in protected activity by making complaints regarding

race discriminatory conduct, and denying the defendant's motion to dismiss the plaintiff's

retaliation claim).

The single case to which Defendant cited in its Motion in support of its argument that

Plaintiff did not sufficiently plead a retaliation claim, *Kokinchak v. Postmaster Gen. of the

United States*, 677 Fed.Appx. 764 (3d Cir. 2017), did not even include a retaliation claim.

Of course, Plaintiff has also alleged in her First Amended Complaint that Defendant

retaliated against her after she filed her Charge of Discrimination with the EEOC, including that

high-level employees of Defendant interrogated her colleagues about her, including asking

whether they had ever seen Plaintiff drunk; asking whether they had ever seen Plaintiff do or say

anything that was disloyal to Williams; asking who Plaintiff's friends were in Defendant's

District Attorney's office; questioning Plaintiff's work ethic; and, questioning Plaintiff's work

practices; and, that, she was constructively discharged from her employment.

Based on the above, Defendant's Motion to Dismiss Plaintiff's retaliation claims should be dismissed.

**2.      Plaintiff has set forth sufficient evidence at this stage to establish a causal connection between her protected activity and Defendant's retaliatory conduct**

Defendant incorrectly asserts that Plaintiff's retaliation claims should be dismissed because she has not alleged facts from which this Court could conclude that the retaliatory conduct to which Defendant subjected her was casually connected to her protected activity. Defendant's position is contrary to established Third Circuit case law; in fact, Defendant failed to cite to a *single* case at the motion to dismiss stage in support of its present motion.  Moreover, it ignores facts that Plaintiff pled in her First Amended Complaint.

The entire basis for Defendant's arguments in its present Motion seems to be that the first action of retaliation that Plaintiff has alleged occurred about three (3) months after Plaintiff engaged in protected activity; as such, according to Defendant, Plaintiff's retaliation claims should be dismissed.  Courts in this Circuit are hesitant to grant motions to dismiss on retaliation claims as "the fact-based nature of causation questions in workplace retaliation cases often means that they are not readily amenable to resolution on a motion to dismiss, where our review is confined to an assessment of the well-pleaded facts." *McAssey v. Discovery Mach., Inc.*, 2018 U.S. Dist. LEXIS 6728 (M.D.Pa. Jan. 12, 2018).

In order to establish a *prima facie* case of retaliation under Title VII, a plaintiff must show: 1) that she engaged in conduct protected by Title VII; 2) the employer took an adverse action against her; and 3) there was a causal connection between her participation in the protected activity and the adverse employment action. *E.g., Kachmar v. Sungard Data Systems, Inc.,* 109 F.3d 173, 177 (3d Cir. 1997).  "When the temporal proximity is not so close as to be

unduly suggestive, [the Third Circuit has] recognized that timing plus other evidence may be an appropriate test." *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 288 (3d Cir. 2001). *See also Farrell v. Planters Lifesavers Company*, 206 F.3d 271 (3d Cir. 2000)("a plaintiff may array upon a broad array of evidence to" show a causal link for the purposes of establishing retaliation).  Indeed, an  usually suggestive temporal proximity may be sufficient, but is not necessary, to establish a causal link sufficient to defeat summary judgment (after the facts of the case are fleshed out through the discovery process).  *E.g., Kachmar*, 109 F.3d at 177. The Court should consider the evidence as a whole to determine whether it may suffice to raise an inference of causation.  *Kachmar,* 109 F.3d at 177.

Here, and as Plaintiff set forth in her Complaint, she was employed at Defendant for twenty (20) years as a highly regarded member of the District Attorney's office, and a consistently excellent performer who was promoted into a deputy position around 2011 to oversee several units and who reported to the District Attorney, the highest-level employee in that office.  Yet, after ***twenty (20) years*** of excellent performance and no issues regarding her employment or treatment, suddenly, within less than about ***three (3) months*** of her engaging in protected activity regarding sex and race discriminatory conduct, Defendant retaliated against her, including:

- Defendant twice failing to promote her into positions for which she was qualified;

- Defendant questioning her direct reports about her conduct;

- Defendant accusing her, falsely, of inappropriately communicating information to her staff;

- Defendant questioning decisions that she made that were within her realm of responsibility ***and which had not been challenged prior to engaging in protected activity***;

- Defendant ignoring her request for a meeting regarding the discriminatory and retaliatory conduct to which she was being subjected;

- Defendant demoting her into a lower-level position with lower compensation;

- Defendant interrogating her colleagues about her, including asking whether they had ever seen Plaintiff drunk; asking whether they had ever seen Plaintiff do or say anything that was disloyal to Williams; asking who Plaintiff's friends were in Defendant's District Attorney's office; questioning Plaintiff's work ethic; and, questioning Plaintiff's work practices; and,

- Defendant constructively discharging Plaintiff from her employment.

A comparison of Plaintiff's treatment prior to her engagement in protected activity, and after the same, is certainly suggestive of retaliation.

Plaintiff further alleged that her engaging in protected activity was a "motivating and/or determinative factor in Defendant's retaliatory treatment, including subjecting her to a hostile work environment and demoting her." (Pl. Am. Compl. ¶52)   Indeed, in *Wils v. Phillips*, 1999 U.S. Dist. LEXIS 4625 (Apr. 9, 1999), the court concluded that a similar allegation was sufficient to deny the defendant's motion to dismiss the plaintiff's retaliation claim, noting that,

> "The Defendants argue that 'there is also no evidence of a causal connection between Plaintiff's alleged protected activity and her alleged adverse employment action.' Defs.' Mem. of Law in Support of Mot. to Dismiss at 11.  The Court finds that this argument is not proper at the motion to dismiss stage.  In evaluating the Defendants' motion, this Court must accept this allegations in Plaintiff's complaint as true (citation omitted).  The Plaintiff alleges that 'Defendants' decisions to demote, give an unfair performance review to, and constructively discharge plaintiff were motivated by and causally connected to the fact that she engaged in protected activities....'  Pl.'s Compl. at P 66.  The Court must accept this allegation as true for now and, therefore, denies the Defendants' motion in this respect.

*Id*. at, *12.

Moreover, Defendant's assertion in its Motion that "Plaintiff has not alleged that there was a pattern of antagonism in the intervening period" ignores Plaintiff's pleadings.  Plaintiff has

alleged that, after she engaged in protected activity, Defendant engaged in conduct that included
the following:

- Failing to promote Plaintiff into the COS position;

- Failing to promote Plaintiff into the First Assistant position;

- Questioning Plaintiff's direct reports regarding her conduct at meetings and her
  communications with her staff;

- Accusing Plaintiff, falsely, of inappropriately communicating information to her
  staff prior to Defendant officially announcing the same;

- Questioning Plaintiff's decisions regarding investigations and charging
  recommendations, which were under her area of responsibility, and which had not
  been challenged prior to her expressed opposition to Defendant's tolerance of its
  employees' sexist and racist conduct;

- Ignoring Plaintiff's request to meet with the District Attorney's Office second-in-
  command, the First Assistant, regarding Defendant's discriminatory and
  retaliatory conduct; and,

- Demoting Plaintiff into the position of Chief of Private Criminal Complaints,
  resulting in a salary reduction as well as lesser responsibilities; and,

- Interrogating Plaintiff's colleagues about her in an appropriate and hostile
  manner, including asking whether they had ever seen her drunk and questioning
  her work ethic and work practices.

Finally, Plaintiff set forth in her First Amended Complaint that when she complained to
Williams about a sex and race-based hostile work environment, and that Defendant's failure to
take action would negatively impact Defendant's female employees, Williams was dismissive of
her complaints.  Furthermore, and as Plaintiff also alleged in her Complaint, no one at Defendant
ever told her that it was investigating her complaints, including her two (2) Charges of
Discrimination that she filed with the EEOC, copies of which she sent to Defendant on the dates
that she filed them.  No one at Defendant ever told Plaintiff that it was taking any action to

correct or remedy the discriminatory and retaliatory conduct to which she was subjected, further evidence of Defendant's tolerance of discriminatory conduct, and willingness to retaliate against the employee opposing the same.

It is clear, based on the above, that Defendant has failed to meet its "burden of showing that there is no cognizable claim for relief" on Plaintiff's retaliation claims.  As such, its present Motion should be denied.

### D.    Plaintiff Exhausted Her Administration Remedies Regarding Defendant's Failure to Promote Her Into The First Assistant Position

Despite the fact that Plaintiff included in her Charge of Discrimination that she filed with the Equal Employment Opportunity Commission facts relating to Defendant's selection of another individual, George Mosee, for the First Assistant position, Defendant now argues that Plaintiff did not exhaust her administrative remedies regarding that position.

"According to well-settled law, the scope of a judicial complaint is not limited to the four corners of the EEOC Charge." *Doe v. Kohn Nast & Graf, P.C.*, 866 F. Supp. 190, 196 (E.D. Pa. 1994).  In *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-99 (3d Cir. 1976), the Court held that a plaintiff is entitled to bring forth claims in a civil action that were described in an administrative charge *as well as* claims that are an outgrowth of those discriminatory and retaliatory acts previously described.  In *Ostapowicz*, the court explained: the "parameters of a civil action in the District Court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charges of discrimination, including new acts which occurred during the pendency of proceedings before."

In Plaintiff's Charge, she set forth in the same section in which she alleged that Defendant failed to promote her into the COS position that Defendant announced that it had

promoted another individual into the First Assistant position.  Plaintiff further set forth in her

EEOC Charge that Defendant had failed to articulate legitimate, non-discriminatory actions for

discriminating against Plaintiff based on her sex and her race, and retaliating against her based

on her complaints of race and sex discrimination.  As the facts regarding Plaintiff's present claim

that Defendant failed to promote her into the First Assistant position were set forth in Plaintiff's

EEOC Charge, she has sufficiently exhausted her administrative remedies regarding the same.

As such, Defendant cannot assert with any legitimacy that Plaintiff has failed to exhaust her

administrative remedies regarding that claim, and its present Motion should be denied.

### E.      **Plaintiff Has Sufficiently Pled Her Claims of Discrimination**

Plaintiff's claims in this case include that Defendant failed to promote her into the COS

position; Defendant failed to promote her into the First Assistant position; Defendant demoted

her; and, Defendant subjected her to a hostile work environment.  Defendant argues that

Plaintiff's claims of discrimination should be dismissed because, it alleges, she has not

established her *prima facie* case of discrimination in her First Amended Complaint.

First, as with the remainder of Defendant's Motion, it has, again, failed to cite to a single

case at the motion to dismiss stage in support of its position.[3]  Secondly, contrary to Defendant's

assertion in its Motion that Plaintiff did not set forth her *prima facie* case in her First Amended

Complaint, it is well-established that she need not do so at this stage.  "It is thus worth reiterating

that, at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie*

case in order to survive a motion to dismiss."  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d

Cir. 2016).  "A determination whether a *prima facie* case has been made ... is an evidentiary

inquiry — it defines the quantum of proof [a] plaintiff must present to create a rebuttable

---

[3] Here, Defendant cites to cases at the summary judgment stage and an appeal of a ruling on a motion *in limine*.

18

presumption of discrimination.  Even post-*Twombly*, it has been noted that a plaintiff is not required to establish the elements of a *prima facie* case."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009).  All Plaintiff need do, which she has done, is "put forth [factual] allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]' of each of her claims." *Id.*[4]  Plaintiff is not required to set forth, as Defendant asserts, "direct evidence of discrimination"[5] or "similarly situated comparators."  As she has sufficiently pled her claims of discrimination and retaliation, Defendant's Motion to Dismiss should be denied.

F.     **The Issues About Which Plaintiff Was Complaining Are A Matter of Public Concern; As Such, Defendant's Motion to Dismiss Her Section 1983 Claims Should Be Denied**

To prevail on a First Amendment retaliation claim pursuant to Section 1983, a plaintiff must establish that she "engaged in protected speech; [her] interest in the protected speech outweighs the employer's countervailing interest in promoting the efficiency of the public service it provides to its employees; and, the protected activity was a substantial or motivating factor in the alleged retaliatory action." *Isler v. Keystone Sch. Dist.*, 2008 U.S. Dist. LEXIS 65902 (W.D.Pa. Aug. 12, 2008)(*citing Baldassare v. New Jersey*, 250 F.3d 188 (3d Cir. 2001)).

As an initial matter, and yet again, Defendant has failed to cite to a single case on a motion to dismiss stage in support of its position set forth in its Motion.  Moreover, in one of the cases to which Defendant cited, *Azarro v. City of Allegheny*, 110 F.3d 968 (3d Cir. 1997), the Court reversed the District Court's grant of summary judgment on the plaintiff's Section 1983

---

[4] Moreover, Plaintiff has included in her complaint that she is Asian and female, and that the individual selected to fill the COS role is white, and, that the individual selected to fill the First Assistant role is male.
[5] Of course, a plaintiff in an employment discrimination can prevail on her claims without ever setting forth "direct evidence of discrimination"; she may simply present sufficient circumstantial evidence to satisfy the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

retaliation claim where she complained of sexual harassment by a high-level public official

(assistant to the Commissioner). The Court in that case noted that,

> "We believe this form of discrimination, when practiced by those exercising
> authority in the name of a public official, is as much a matter of public concern as
> racial discrimination practiced under similar circumstances. We also believe that
> [the plaintiff's] communications to Fox and Sirabella brought to light actual
> wrongdoing on the part of one exercising public authority that would be relevant
> to the electorate's evaluation of the performance of the office of an elected
> official." *Id*. at 978.

Similarly, and contrary to Defendant's attempts to mispresent the seriousness of the

situation about which Plaintiff was complaining, the issue in Plaintiff's present complaint was

not about "garden variety sexual harassment or discrimination," as Defendant attempts to portray

it. This was a situation in which high-level employees of Defendant's District Attorney's Office

engaged in gross conduct which involved sending gross sexist, sexual, and racist emails

(examples of which are set forth in detail in Plaintiff's First Amended Complaint). This was a

situation in which Plaintiff complained that the failure of Defendant's District Attorney's Office

to take appropriate remedial and/or corrective action regarding that sex and race discriminatory

conduct created a hostile work environment based upon sex and race, and would negatively

impact the women who worked in the District Attorney's Office. The emails that Defendant's

high-level employees sent generated significant press, both national and local. If this issue is

found, especially at this motion to dismiss stage, to not be a matter of public concern, it is

difficult to imagine one that would be. As such, Defendant's Motion to Dismiss Plaintiff's

Section 1983 retaliation claim should be denied.

IV.     **CONCLUSION**

Based on the foregoing reasons, it is clear that Defendant has not met its burden to

demonstrate that Plaintiff's claims of discrimination and retaliation should be dismissed.  As

such, Plaintiff respectfully requests that this Honorable Court deny Defendants' present Motion.


Respectfully submitted,

**CONSOLE MATTIACCI LAW, LLC**

Dated: March 16, 2018                    By:     /s/ Caren N. Gurmankin
                                                 Caren N. Gurmankin, Esquire
                                                 1525 Locust Street, 9th Floor
                                                 Philadelphia, PA 19102
                                                 (215) 545-7676
                                                 Attorney for Plaintiff,
                                                 Laurie Malone

21

## CERTIFICATE OF SERVICE

I certify that on March 16, 2018, I sent Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, via ECF upon counsel for Defendant below:

Christopher H. Rider, Esq.
City of Philadelphia Law Department
1515 Arch Street, 16th Floor
Philadelphia, PA 19102
christopher.rider@phila.gov

Attorney for Defendant

**CONSOLE MATTIACCI LAW, LLC**

By:   /s/ Caren N. Gurmankin
Caren N. Gurmankin, Esq.
1525 Locust Street, 9th Floor
Philadelphia, PA 19102
(215) 545-7676

Attorney for Plaintiff